**UNITED STATES DISTRICT COURT FOR**
**THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| McDaniel Fire Systems, Inc. | Court File No. 1:09-cv-3320 |
| Plaintiff, | Hon. Suzanne B. Conlon |
| v. | |
| Northern Building Co., | **Defendant's Response to** |
| | **Plaintiff's Motion to Compel** |
| Defendant. | **And For Costs** |

**Defendant Northern Building Companies Response to Plaintiff's Motion to**
**Compel and For Costs**

Defendant, Northern Building Company, by and through its attorneys, responds as follows to Plaintiff's Motion to Compel and for Costs:

1.      Defendant, Northern Building Company, has provided the plaintiff with <u>every</u> document that it has in its possession.  Indeed, the defendant copied its complete file and provided it to the plaintiff.

2.      Defendant, Northern Building Company, was the general contractor hired by the Federal Aviation Administration (hereafter, "FAA") to oversee an upgrading of the safety systems at Chicago's Midway Airport control tower.

3.      Before it went bankrupt, plaintiff McDaniel Fire Systems was a subcontractor hired by Northern Building Company to work on an upgrade to the sprinkler system in the Midway control tower.  This was only one portion of the overhaul of the safety systems to which Northern Building Company was put in charge.

4.      Pursuant to FAA guidelines, before the FAA will certify a project as

complete, the FAA will meet with subcontractors and go through a so-called FAA "punch list" to make sure each subcontractor has complied with FAA requirements.

5.      McDaniel made assurances to Northern Building Company that McDaniel was familiar with and would be able to comply with FAA "punch card" Requirements, as it had experience working FAA jobs.

6.      It became apparent that McDaniel had never worked on an FAA job before and would be unable to assist the FAA in the completion of an FAA "punch card".

7.      McDaniel had been paid $20,688.84, in advance of full performance of its work, when it abandoned the Midway project (despite having only rightfully earned $10,760 for the work it had performed).

8.      McDaniel filed for bankruptcy protection shortly thereafter and demands payment from Northern in the amount of $148,172.28.

9.      Defendant Northern was forced to hire a replacement for McDaniel (a company called High Rise Security Systems).

10.      High Rise completed the upgrade on the sprinkler system, (and at FAA requests re-did most of what McDaniel had done), and billed defendant Northern $24,929.

11.      Contrary to the claims made by McDaniel in this case, Northern has been paid $180,991 by the FAA for the work it did as the general contractor.

12.      Plaintiff McDaniel may not like the defendants' answers to interrogatories and responses to requests for documents, but the answers are accurate and complete.

13.     There are absolutely no documents that defendant Northern Building has with respect to the Midway project that have not been delivered to the plaintiff.

14.     The plaintiff sent the defendant 20 interrogatories and 20 requests for documents.  All have been answered.

15.     Specifically, the plaintiff complains that the defendant has not answered in sufficient detail the following interrogatories:

> Describe the complete basis for, and identify every fact supporting your contention that McDaniel breached its contract with Northern.
>
> Describe the complete basis for, and identify every fact you allege supports Northern's termination of McDaniel.
>
> Describe the complete basis for, and identify every fact supporting your contention that McDaniel did not follow the specifications outlined in the contract.

16.     In fact, the defendant *has* answered the questions asked by the plaintiff, its simply that the plaintiff doesn't like the answers.

17.     Whether it wants to admit it or not, plaintiff McDaniel walked away from the Midway project and refused to come back, finish its work, or meet with the FAA.  The answer provided by defendant Northern Building that "McDaniel refused to return to the project and complete the (FAA) 'punch list', and that "McDaniel abandoned the project", is the full and complete answer to the questions.

18.     To be clear, Northern did not fire McDaniel.  McDaniel quit this project.   McDaniel was not "terminated", in fact, it was overpaid for what it had actually done.

19.     As for the request for documents the plaintiff contends the defendant hasn't complied with, this is simply not true.  Every document the defendant has

3

with respect to this project has been turned over to the plaintiff.

20.     Specifically, the plaintiff contends that each of the following requests have not been satisfied (and yet, the defendant attaches herewith and incorporates the documents that do, in fact, comply with what the plaintiff appears to be looking for):

Request 2:  Copies of pay applications submitted by Northern;

(these, to the extent that they exist, have been provided, see exhibit "A")

Request 3:  Proof of payments received by Parsons;

(plaintiff acknowledges that defendant has been paid $180,991)

Request 4:  Provide copies of all change order requests;

(these, to the extent that they exist, have been provided, see exhibit "B")

Request 5:  Copies of every schedule prepared by Northern Building

(these, to the extent that they exist, have been provided, see exhibit "C")

Request 15:  Produce all documents relied upon in completing pay applications submitted by Northern;

(these, to the extent that they exist, have been provided, see exhibit "D")

21.     The defendant has no other document that it can turn over to the plaintiff – the plaintiff has received everything (and has repeatedly been told that).

22.     The owner of defendant Northern Building has met with counsel for the plaintiff (and has willingly offered to be deposed).

23.     The defendant has done everything the plaintiff has asked with respect to discovery, including a stipulation requested by the plaintiff to extend discovery.

24. Whether the plaintiff likes the answers or not, the plaintiff abandoned the Midway project and the defendant was forced to find a replacement.

25. Plaintiff's requests for costs and attorneys fees should be denied, and if anything, the defendant should be awarded reasonable attorneys fees for having to defend this motion.

26. The defendant's attorney received a call from plaintiff's counsel (Dwight Rabuse) with respect to discussing settlement prior to motions for summary judgment.  A message was left on the defendant's attorneys voice-mail on February 1, 2010.  The defendant's attorneys voice mail had a message on it that indicated that he would be out of the office though Friday, February 5th, and no attempt appears to have been made to reach any other person in defendant's attorney's office.

27. Defendant believes this motion was brought out of plaintiff's displeasure with having the defendant refuse plaintiff's settlement demands.

28. Defendants counsel returned to his office on February 8, 2010, to find that this motion had been filed on February 4, 2010 and noticed for hearing for February 11, 2010.

NOW WHEREFORE, the plaintiffs motions should be denied and the defendant should be awarded reasonable attorneys fees for having to defend said motion.

Dated:  February 8, 2010                     SCHRAM, BEHAN & BEHAN

                                             /s/ Michael R. Behan
                                             Michael R. Behan
                                             4127 Okemos Road, Suite 3

Okemos, Michigan 48864
Phone: 517-347-3500

**Attorneys for Defendant**
**Northern Building Company**

CERTIFICATE OF SERVICE

I, Michael R. Behan, an attorney, certify that I caused copies of the foregoing

Defendant's Response to Plaintiff's Motion to Compel to be served via the Court's

CM/ECF system this 8th day of February, 2010

/s/ Michael R. Behan
Michael R. Behan